UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA JEAN SCHULTZ,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, *Acting Commissioner of Social Security*,<br><br>    Defendant. | Case No.: 13-CV-0167 YGR<br><br>ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT |

In this case, Plaintiff Martha Jean Schultz seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") that denied Plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act. A certified copy of the administrative record ("Record") has been filed with the Court, and the parties have filed cross-motions for summary judgment. (Dkt. Nos. 19 ("Pl. MSJ"), 21 ("Def. XMSJ"), 22 ("Pl. Reply"). Having carefully considered the Record and the parties' papers, the Court **GRANTS** Plaintiff's motion, **DENIES** the Commissioner's cross-motion, and **REMANDS** this matter to the Social Security Administration for calculation and payment of benefits. As set forth more fully below, the administrative law judge ("ALJ") who issued the Commissioner's final decision improperly discredited Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her gastrointestinal symptoms. That error, in turn, resulted in the ALJ's erroneous assessment of Plaintiff's residual functional capacity, which failed to reflect all of Plaintiff's limitations. The testimony of the vocational expert at Plaintiff's hearing establishes that limitations like those suffered by Plaintiff result in "unemployability." That testimony justifies immediate remand for payment of benefits.

I.       BACKGROUND

   A.       PROCEDURAL HISTORY AND HEARING TESTIMONY

On April 26, 2011, Plaintiff filed an application for SSI, alleging disability beginning April 2, 2006. The Social Security Administration ("SSA") issued an initial denial of her claim on July 29, 2011, and a denial upon reconsideration on February 2, 2012. Plaintiff requested and received a hearing before an ALJ, held July 31, 2012. At the hearing, two witnesses testified: Plaintiff, and a vocational expert, Robert A. Raschke, M.A.

   1.       **Plaintiff's Testimony**

In relevant part, Plaintiff testified as follows. Plaintiff is an unmarried woman born in 1957. (Record at 37.) She lives alone in a trailer with a small dog. (*Id.* at 38.) She has an associate's degree, as well as professional chef training. (*Id.* at 38-39.) Her last full-time employment was a ten-year period of work for the Atlantic Recording Corporation, booking tours and artists and, later, overseeing recording budgets. (*Id.* at 39.) That employment ended in May of 1993, when she left for reasons she describes as "political." (*Id.* at 39-40.) At that time, Plaintiff ceased working and started living off of an inheritance and her savings. (*Id.* at 41.) She considered starting a gift basket business but ultimately received culinary arts training, eventually working part-time as a culinary arts trainer herself. (*Id.* at 40-41.) She last worked in that capacity in 1995 or 1996. (*Id.* at 39.) She moved from West Hollywood, California, to Napa, California, in or around November 1998, with the intent of "getting into the food scene." (*See id.* at 42.) She continued to live off of her savings and inheritance thereafter. (*Id.*) She now supports herself with food stamps and occasional sales of small items on eBay. (*Id.* at 42-43.) The items she sells on eBay consist of "duck pictures and duck decors" from the estate of her brother (who committed suicide in 2006), "antiques" from the estate of her parents, and "horse accessories" that she sells on her sister's behalf for a commission. (*Id.* at 43, 54, 57-58.) Plaintiff testified that, at the time of her hearing, she had made $298 over the previous three months selling items on eBay. (*Id.* at 69.)

Plaintiff testified that she is unable to work in part because she suffers from celiac disease and bowel incontinence, and in roughly equal part because of depression and anxiety. (Record at 72.) As to Plaintiff's gastrointestinal issues, Plaintiff testified to having been diagnosed with celiac

1  disease in 2001, but to suffering from residual intestinal damage due to her celiac having gone
2  undiagnosed until "late in life." (*Id.* at 44, 46.) Plaintiff testified to having adopted a gluten-free
3  diet following her celiac diagnosis and to her continuing adherence to that diet. (*Id.* at 45, 47, 65.)
4  Despite her gluten-free lifestyle, Plaintiff reported suffering from attacks of vomiting, diarrhea, and
5  intestinal cramps "three or four times a month." (*Id.* at 47-50.) Plaintiff takes medications for her
6  symptoms but reports that they do not do a good job at addressing them. (*Id.* at 50.) Plaintiff gets
7  relief from sitting in her bathtub. (*Id.* at 51.) Roughly once a month, an attack is sufficiently bad
8  that Plaintiff sleeps in her bathtub, waking up when the water gets cold. (*Id.* at 51-52.)

9  Outside of the days when she suffers from an attack, Plaintiff testified that on a "normal
10 day," she has ten bowel movements. (Record at 71.) Plaintiff reports needing to spend "at least 15
11 to 20 minutes" in the restroom each time on a normal day, and, depending on the severity of an
12 attack, up to four hours. (*Id.* at 73.) Due to her incontinence, Plaintiff wears adult undergarments
13 to go to the store. (*Id.* at 71.) Plaintiff has no car, so when she leaves her trailer to shop she either
14 uses a public shuttle or accepts a ride from her sister. (*See id.* at 60-63.) She plans her shopping
15 trips to visit stores that have good public restrooms. (*See id.* at 69-70.) She testified that she eats
16 very little before leaving her home and then "hope[s] for the best." (*Id.* at 71.) Plaintiff reported
17 having had incidents where, despite her planning, she publically soiled herself. (*Id.* at 70.)

18 In addition to Plaintiff's celiac and incontinence issues, Plaintiff testified to suffering from
19 mental health symptoms that prevented her from working. (Record at 56.) Plaintiff also testified to
20 having occasional "fun" social interaction with the people in her trailer park. (*See id.* at 66-67.)
21 Plaintiff also reported, however, having three to four days per month where she "do[esn't] want to
22 get out of bed," depending on how stressed she is. (*Id.* at 56.) She reported stressors of "not being
23 able to work" and "[b]eing evicted from my [trailer] park." (*Id.*)

24 Plaintiff described her activities of daily living as waking, checking her email, fixing herself
25 a gluten-free breakfast, feeding her dog, planning out her meals, conducting her eBay sales from
26 bed, and going shopping once or twice per week and to the food bank once per month. (Record at
27 57-59, 63-64, 71.) Plaintiff reported no difficulty with daily hygiene, except when having an
28 attack. (*Id.* at 65.)

3

### 2. The Vocational Expert's Testimony

Vocational expert Robert Raschke (the "VE") also testified at the ALJ hearing. After the agreeing with the VE that Plaintiff's eBay sales constituted "minimal work" and that Plaintiff had no past relevant work (Record at 74), the ALJ asked the VE two hypothetical questions. The ALJ's first hypothetical asked what jobs could be performed by an individual of Plaintiff's age, education, and work background who had no exertional restrictions and "an SVP 2 maximum," excluding "any work that involves work at heights or hazardous machinery." (*Id.* at 75.) The VE testified that at least three jobs meeting those criteria existed in significant numbers in the national economy: warehouse worker, small product assembler, and lens block gauger. (*Id.* at 75-76.)

The ALJ's second hypothetical question asked whether the individual from the previous question could find competitive work if that individual needed three to four unscheduled, "random" breaks of "15 minutes apiece," in addition to the morning, lunch, and afternoon breaks afforded in a typical workplace, and needed these additional unscheduled breaks on a "chronic" basis. (*Id.* at 77.) The VE responded in the negative, explaining that, because such a person would be "away from [the] workplace an hour a day" and "automatically . . . 12 and a half percent off task," such a person, in the VE's opinion, would be unemployable. (*Id.* at 77-78.)

### B. THE ALJ'S DECISION

On August 15, 2012, the ALJ resolved Plaintiff's April 26, 2011 application by rendering a decision of "not disabled." (Record at 10-19 ("Decision").) The Decision undertook a five-step analysis required by regulation.[1]

---

[1] The five steps are:

1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. § 416.920(b).

2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. § 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Subpart P, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. § 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. § 416.920(e).

5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. § 416.920(f).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 26, 2011 (the application date) and, accordingly, proceeded to step two. (Record at 12.)

At step two, the ALJ found that Plaintiff suffered from three "severe impairments": celiac sprue (that is, celiac disease), an anxiety disorder, and an affective disorder. (Record at 12-13.) The ALJ, addressing Plaintiff's claim in her application that she suffers from Epstein-Barr and chronic fatigue syndrome, found that those ailments "are not medically determinable ailments and, therefore, cannot be severe impairments." (*Id.* at 12.) The ALJ found that Plaintiff's hypertension and asthma did not rise to the level of severe impairments. (*Id.*) However, because the ALJ found that Plaintiff suffered from at least one severe impairment (here, three), the ALJ proceeded to step three.

At step three, the ALJ found that Plaintiff's impairments, considered separately or together, did not meet or medically equal the severity of one of the listed impairments. (Record at 13.) In the course of the step three analysis, the ALJ specifically found, among other things, that Plaintiff has "moderate" difficulties "[w]ith regard to concentration, persistence[,] or pace." (*Id.* at 14.) Because, however, the ALJ found that Plaintiff's impairments did not meet the regulatory criteria automatically establishing disability, the ALJ proceeded to step four of the five-step analysis, beginning with a determination of Plaintiff's residual functional capacity ("RFC").[2]

At step four, the ALJ found that Plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following non-exertional limitations: The [Plaintiff] retains the abilities to engage in unskilled work. She should not work at heights or around hazardous machinery as a precautionary measure for easy access to a restroom when needed." (Record at 15.) In making this RFC finding, the ALJ evaluated Plaintiff's testimony in light of medical record evidence which included the opinions of Jenna Brimmer, M.D., an examining internist; Richard Palmer, Ph.D., an examining psychotherapist; and Doug Wilson, M.D., Plaintiff's treating physician. (*Id.* at 16-17.) The ALJ also considered the third-party function report of Plaintiff's sister, Elizabeth Schultz. (*Id.* at 17.) Considering these and other opinions, the ALJ determined

---

[2] Simply put, "RFC is what an individual can still do despite his or her limitations." *See* Social Security Ruling 96-8p: Assessing Residual Functional Capacity in Initial Claims, http://www.socialsecurity.gov/OP_Home/rulings/di/01/SSR96-08-di-01.html.

that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but found incredible Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects" of her symptoms "to the extent they are inconsistent with" the RFC. (*Id.*)

Having assessed an RFC for Plaintiff, the ALJ completed step four of the five-step process by finding that Plaintiff had no past relevant work. (Record at 17.) The ALJ accordingly proceeded to step five.

At step five, the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy. (Record at 18.) The ALJ expressly cited the VE's response to the ALJ's first hypothetical question and the three jobs identified therein—warehouse worker, small products assembler, and lens block gauger. (*Id.*) The ALJ ignored the VE's response to the ALJ's second hypothetical question, which, unlike the first question, incorporated limitations pertaining to a need for frequent, lengthy, unscheduled restroom breaks. (*See id.*)

## II. APPLICABLE LEGAL STANDARD

An ALJ's final decision denying disability benefits will be upheld if the ALJ "applied the correct legal standards and substantial evidence supports the decision." 42 U.S.C. § 405(g); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). It is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (internal quotation marks omitted). The Court must consider the entire record, weighing both the evidence that supports and that contradicts the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation marks omitted). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Further, a court reviews "only the reasons provided by

the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

### III. DISCUSSION

Plaintiff challenges the ALJ's findings and conclusions at steps two, four, and five of the five-step process. (Pl. MSJ at 9-11.) The Court addresses those steps in turn.

#### A. STEP TWO

At step two, the ALJ found that Plaintiff suffers from three severe impairments: celiac disease, an anxiety disorder, and an affective disorder. (Record at 12.) The ALJ declined to include Epstein-Barr or chronic fatigue syndrome among Plaintiff's severe impairments on the ground that those ailments "are not medically determinable impairments and, therefore, cannot be severe impairments." (*Id.*) Plaintiff challenges the ALJ's premise that Epstein-Barr and chronic fatigue syndrome are not medically determinable impairments. (Pl. MSJ at 9.)

The Court concludes that Plaintiff's criticism of the ALJ's reasoning has merit, at least with respect to chronic fatigue syndrome,[3] but her attack on the ALJ's step-two findings ultimately falters because she fails to show how the ALJ's error harmed her. Contrary to the ALJ's blanket assertion that chronic fatigue syndrome is not a medically determinable impairment, the Commissioner has delivered guidance that it "may be a disabling impairment." *See* Social Security Ruling ("SSR") 99-2p, http://www.ssa.gov/OP_Home/rulings/di/01/SSR99-02-di-01.html.[4] Here, the ALJ's Decision disregarded this guidance, instead drawing a bright-line rule that chronic fatigue syndrome is, by definition, not a medically determinable impairment. (*See* Record at 12.) That categorical rule cannot be reconciled with SSR 99-2p's guidance that chronic fatigue syndrome may be not only a medically determinable impairment, but a "disabling" one. Because SSRs are

---

[3] Plaintiff faults the ALJ for discounting Epstein-Barr as a medically indeterminable ailment but does not mention Epstein-Barr again. (*See* Pl. MSJ at 9.) As such, Plaintiff fails to articulate a basis for concluding that the ALJ committed error, let alone reversible error, with respect to Epstein-Barr.

[4] "The Commissioner issues Social Security Rulings to clarify the [Social Security] Act's implementing regulations and the [SSA]'s policies." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). While "SSRs do not have the force of law," they are "binding on all components of the SSA." *Id.* (citing 20 C.F.R. § 402.35(b)(1)).

7

"binding on all components of the SSA," *Holohan*, 246 F.3d at 1202, the ALJ applied an incorrect legal standard and, hence, committed legal error.

However, an ALJ's decision will not be reversed for an error that is harmless. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The Ninth Circuit has formulated the harmless error standard in various ways, but the sine qua non is that the error be "inconsequential" to the ALJ's ultimate determination of non-disability. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Further, Plaintiff bears the burden of demonstrating how the ALJ's error prejudiced her. *See McLeod v. Astrue*, 640 F.3d 881, 886-88 (9th Cir. 2011). Here, Plaintiff fails to do so. While she correctly cites SSR 99-2p for the proposition that chronic fatigue syndrome may be a disabling impairment, she points to no evidence in the record establishing that she suffered from chronic fatigue syndrome during the claimed period of disability. Accordingly, Plaintiff has failed to carry her burden of showing that the record contains substantial evidence that could have supported a finding that Plaintiff suffered from "severe" chronic fatigue syndrome during the claimed period of disability. Under such circumstances, remand on this ground is not warranted. *See McLeod*, 640 F.3d at 888 (remand inappropriate where "harmlessness is clear and not a 'borderline question'"). The Court holds harmless the ALJ's legal error at step two of the five-step process.

### B.     STEP FOUR AND THE RFC

The parties' dispute centers on step four—specifically, on the ALJ's determination of Plaintiff's RFC. The ALJ determined that Plaintiff retained the ability "to perform a full range of work at all exertional levels but with the following non-exertional limitations: The [Plaintiff] retains the abilities to engage in unskilled work. She should not work at heights or around hazardous machinery as a precautionary measure for easy access to a restroom when needed." (Record at 15.)

Distilled to its essence, Plaintiff's challenge at step four is that the RFC fails to include all of her limitations. Specifically, Plaintiff faults the Decision's RFC assessment on four grounds: (1) the RFC's non-exertional limitation of Plaintiff to "unskilled work" allegedly fails to capture the

8

1  ALJ's own finding that Plaintiff has "moderate" difficulties with "concentration, persistence, or
2  pace"; (2) the ALJ improperly rejected the opinions of examining psychotherapist Dr. Palmer[5] and
3  treating physician Dr. Wilson,[6] which, if accepted, would support finding Plaintiff had additional
4  limitations; (3) the ALJ improperly discredited Plaintiff's testimony as to the intensity, persistence,
5  and limiting effects of her symptoms; and (4) the ALJ failed properly to credit the lay testimony of
6  Plaintiff's sister, Elizabeth Schultz, which, according to Plaintiff, corroborated her own testimony[7].

---

[5] Dr. Palmer assessed Plaintiff with only a "fair ability to maintain regular attendance in the workplace[,] as mental health symptoms may impact attendance," "fair ability to complete a normal workday or workweek without interruptions from a psychiatric condition[,] as mental health symptoms may impact attendance," and "poor ability to handle normal work[-]related stress from a competitive work environment" because of her mental health symptoms. (Record at 379-80.) Dr. Palmer concluded that Plaintiff's "mental health symptoms may be chronic in nature" and "may not abate on [their] own within a one year period," and that Plaintiff's prognosis was "fair." (*Id.* at 380.) The ALJ gave Dr. Palmer's opinion "some weight." (*Id.* at 16.)

[6] Dr. Wilson, Plaintiff's treating physician, completed a medical source statement in which he opined, inter alia, that Plaintiff had "severe" limitations on both her "ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances," and her "ability to travel in unfamiliar places or to use public transportation." (Record at 398, 399.) Notably, he also stated on a "Celiac Sprue Disease Residual Functional Capacity Questionnaire" that Plaintiff would require "several" "unscheduled bathroom breaks during an 8-hour working day," taking her away from her work for "20 min[utes]" on average, with no advance notice. (*Id.* at 404.) The ALJ gave Dr. Wilson's assessment "reduced weight" "because it is neither consistent with the treatment records authored by him, nor with the overall record." (*Id.* at 17.) "In addition, his opinions are quite conclusory, providing very little explanation of the evidence relied on in forming that opinion." (*Id.*) "The course of treatment pursued by Dr. Wilson has not been consistent with what one would expect if the claimant were truly disabled, as he implied." (*Id.*) As discussed further herein, the only other physician to examine Plaintiff, Dr. Brimmer, neither questioned nor commented upon Dr. Wilson's treatment of Plaintiff's gastrointestinal ailments, and the ALJ appears to have relied on her own medical judgment in criticizing Dr. Wilson's prescribed course of treatment. While the ALJ would have been justified in rejecting Dr. Wilson's opinion if it were "brief, conclusory, *and* inadequately supported by clinical findings," *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (emphasis supplied)), here, the Court need not and does not reach the question of whether Dr. Wilson's opinion was, in fact, inadequately supported by clinical findings, because the ALJ's error in discrediting Plaintiff's uncontroverted symptom testimony supplies a sufficient basis for reversal.

[7] Plaintiff's sister Ms. Schultz submitted a third-party function report which stated that if Plaintiff's "anxiety is high or she has a [c]eliac episode, she's in bed for the day," that Plaintiff handles stress "not well," and that Plaintiff, during a celiac episode, suffers from "upset stomach with vomitting [*sic*] and dry heaves, and severe bouts of diarrhea, as often as 6-7 episodes a day . . . ." (Record at 178, 184, 185.) The ALJ gave Ms. Schultz's report "some weight where consistent with the overall record and the opinions of medical professionals." (*Id.* at 17.) The ALJ identified no inconsistencies between Ms. Schultz's report and the overall record or opinions of medical professionals, nor did the ALJ provide

9

The Court need not address each of these arguments in detail because, for the reasons set forth below, it finds that the ALJ's failure to credit Plaintiff's testimony as to the limiting effects of her symptoms comprises reversible error by itself.[8]

The ALJ expressly found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Record at 17.) The ALJ elaborated, however, that Plaintiff's statements of the "intensity, persistence, and limiting effects" of her symptoms were "not credible to the extent they are inconsistent with" the RFC. The ALJ sought to justify this adverse finding of partial credibility as follows:

> [1] The claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. [2] She has not generally received the type of medical treatment one would expect for a totally disabled individual. [3] Review of the claimant's work history shows that the claimant worked only sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments. In addition, [4] there is evidence that the claimant stopped working for reasons not related to the allegedly disabling impairments.

(Record at 17 (brackets supplied).) For the reasons set forth below, none of the four reasons articulated in the Decision suffice to discredit Plaintiff's testimony regarding her impairments.

To begin, the Court recognizes that an "ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" *Molina*, 674 F.3d at 1112 (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).[9]  The ALJ may use "ordinary techniques of credibility evaluation" in

---

any "specific, germane reasons" to discount Ms. Schultz's testimony, which corroborated Plaintiff's testimony of the severity of her impairments and their effect on her ability to work. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (ALJ required to "provide specific, germane reasons for discounting lay witness testimony" and may not discredit lay testimony "as not supported by medical evidence in the record").

[8] In so holding, the Court suggests neither that the ALJ's Decision was otherwise free from error, reversible or otherwise, nor that Plaintiff is correct in her criticisms of other alleged errors. The Court holds only that the errors analyzed herein suffice to justify reversing the Decision.

[9] For purposes of this analysis, discussions of "pain" may be applied to other symptoms without distinction. "While most cases discuss excess pain testimony rather than excess symptom testimony, rules developed to assure proper consideration of excess pain apply equally to other medically related symptoms." *Swenson v. Sullivan*, 876 F.2d 683, 687-88 (9th Cir. 1989) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1231 (9th Cir. 1987)).

10

evaluating a claimant's testimony, including examining "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007)).

If, using these techniques, "the ALJ finds that the claimant's testimony as to the severity of her . . . impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). "In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina*, 674 F.3d at 1112. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* If such evidence exists, and "there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear[,] and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (internal quotation marks and citations omitted). An ALJ may not evade her duty to articulate specific, clear, convincing reasons merely by partially, and artfully, discrediting testimony "to the extent that" or "insofar as" it conflicts with her RFC determination. *See Taylor*, 659 F.3d at 1234 (citing *Lingenfelter*, 504 F.3d at 1036); *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2008). Rather, where an ALJ finds claimant's testimony concerning symptoms unreliable, the ALJ must make a credibility determination that "*specifically* identif[ies] what testimony is credible and what testimony undermines the claimant's complaints." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (emphasis supplied).

Here, the ALJ expressly found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Record at 17.) This finding satisfies the first step of the required credibility analysis. Further, the ALJ made no "finding of malingering based on affirmative evidence thereof." *Robbins*, 466 F.3d at 883. Consequently, at the second step of the credibility analysis, the ALJ was required to make specific, clear, and convincing

11

findings to support an adverse credibility determination concerning Plaintiff's testimony regarding her symptoms. The four reasons articulated in the Decision do not meet that standard.

The ALJ's first reason is that Plaintiff "described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities does not in any way detract from her credibility as to her overall disability." *Orn*, 495 F.3d at 639 (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (ellipsis omitted)). Rather, a Social Security claimant's activities of daily living may discredit her testimony regarding symptoms only when either (1) the activities "meet the threshold for transferable work skills" or (2) the activities contradict her testimony. *See id.* (citing *Fair*, 885 F.2d at 603). Here, the ALJ fails to engage meaningfully with either aspect of the standard. As to "transferable work skills," the ALJ specifically found that transferability of skills was "not at issue." (Record at 18.) As to contradiction, the ALJ does not identify any specific reason, let alone a clear and convincing reason, why Plaintiff's account of her activities of daily living contradict her account of her symptoms, particularly her testimony regarding bowel incontinence but also her account of frequent bouts of bedrid depression. On the contrary, Plaintiff's activities of daily living bolster her symptom testimony. The Record discloses that Plaintiff's daily activities are sharply circumscribed and centered in and directly around her trailer. Plaintiff testified that her normal day consists of checking her email, feeding her small dog, minding her online eBay sales, planning and cooking meals, intermittently socializing with neighbors and her sister if the latter comes to visit, and occasional outings to shopping destinations a short distance from her home, along a route planned to maximize access to restroom facilities. Nothing in these activities is inconsistent with Plaintiff's reported symptoms of severe bowel incontinence necessitating frequent, unexpected, and immediate access to restroom facilities, or with her report of regular incidents of immobilizing depression. Ultimately, though the ALJ gestured toward Plaintiff's daily activities of living in making her adverse credibility determination, she made none of the "specific findings relating to [Plaintiff's] activities" required to support her determination. "[D]isability claimants should not be

penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ's second stated basis for discrediting Plaintiff's testimony fares no better. The ALJ stated that Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual." (Record at 17.) The Decision, however, identifies no medical opinions stating what sort of treatment *should* be expected for a totally disabled individual suffering from Plaintiff's impairments, suggesting that the ALJ impermissibly relied on her own, lay medical opinion. The Decision does not cite any statement by a medical professional controverting the course of medical treatment prescribed by Plaintiff's treating physician, Dr. Wilson. The only other medical doctor to examine Plaintiff, Dr. Brimmer, found, as Dr. Wilson had, that Plaintiff has celiac disease. (Record at 383 ("For evaluation, the claimant was diagnosed with the celiac disease on blood tests.").) Dr. Brimmer reported Plaintiff's statements regarding incontinence without controversion, and those statements are consistent with Plaintiffs' testimony before the ALJ. Neither did Dr. Brimmer comment on the course of treatment prescribed by Dr. Wilson except to say that Plaintiff's blood pressure—a concern not relevant here—was not optimally controlled. (Record at 386, 387.) In sum, Dr. Brimmer did not contradict Dr. Wilson's opinions regarding Plaintiff's gastrointestinal difficulties.[10]

"To reject the uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). Here, in opining that Plaintiff had "not generally received the type of medical treatment one would expect for a totally disabled individual," the ALJ cited no supporting medical evidence. The ALJ's personal, lay opinion is insufficient to call into question a treating physician's uncontradicted opinions. *Cf. Taylor*, 659 F.3d at 1235 (ALJ's personal observations "do not

---

[10] Even if the opinion of Dr. Brimmer, an examining physician, had contradicted the opinion of Dr. Wilson, Plaintiff's treating physician, in order to reject Dr. Wilson's opinion in favor of Dr. Brimmer's, the ALJ would have had to "make findings setting forth specific, legitimate reasons for doing so . . . based on substantial evidence in the record." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (internal quotation marks and brackets omitted). The ALJ set forth no such reasons.

1 constitute substantial evidence for rejection" medical opinions). Neither do they supply a reason to
2 discredit a claimant's testimony as to the intensity, persistence, and limiting effects of her
3 symptoms where the existence of those symptoms is supported by objective medical evidence and
4 there is no affirmative evidence of malingering. *Id.* The ALJ's role as fact-finder imposes on her a
5 duty to resolve conflicts in medical evidence. *Thomas*, 278 F.3d at 957 (citing *Matney v. Sullivan*,
6 981 F.2d 1016, 1019 (9th Cir. 1992)). That role does not grant her a license to exercise her own,
7 independent medical judgment in the absence of such conflict. *See Tackett*, 180 F.3d at 1102; *Day
8 v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). The ALJ's lay opinion of what treatment
9 would have been prescribed to Plaintiff if she were truly disabled supplies no basis to discredit
10 Plaintiff's testimony regarding her symptoms.

The ALJ's third and fourth reasons for discrediting Plaintiffs' testimony are sufficiently similar that the Court addresses them together. The ALJ stated:

> [3] Review of the claimant's work history shows that the claimant worked only sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments. In addition, [4] there is evidence that the claimant stopped working for reasons not related to the allegedly disabling impairments.

Record at 17 (brackets supplied). The import of these statements is non-obvious. At best, the ALJ is attending to an irrelevant portion of the record, for it does not follow from the fact that Plaintiff stopped working when she had an inheritance and savings to rely upon that she is able to work now that those resources, many years later, have been extinguished. At worst, the ALJ insinuates malingering without making the affirmative findings required to support such a conclusion. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). However, this is a case where "[n]o witness, qualified expert or otherwise, expressed the opinion that claimant was in any way malingering." *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984). In such a case, an ALJ's failure to support with "specific, cogent reasons" an adverse credibility determination with respect to a claimant's testimony concerning medically supported symptoms is legal error. *E.g.*, *Greger v. Barnhart*, 464 F.3d 968, 975 (9th Cir. 2006) (citing *Morgan*, 169 F.3d at 599); *see also Swenson*, 876 F.2d at 688

(where "no doctor suggested that [claimant] was malingering," an ALJ's "failure to specify adequate reasons for rejecting [claimant's] testimony" was error).

The Commissioner's defense of the ALJ's reasoning is unavailing. (Def. XMSJ at 8.) The three cases cited by the Commissioner do not support the Decision and, in fact, underscore its inadequacy. The Commissioner cites first to *Bray v. Commissioner of Social Security Administration*, 554 F.3d 1219, 1227 (9th Cir. 2009). The cited passage merely states the uncontroversial point of law that ALJs making credibility determinations are permitted to weigh inconsistencies between a claimant's testimony and, inter alia, her activities of daily living. As set forth above, that is the starting point for a proper analysis, not, as the Commissioner suggests, the end point. *See*, *e.g.*, *Orn*, 495 F.3d at 639. The second cited case, *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007), observes that evidence of "conservative treatment" has been held sufficient to discount a claimant's testimony regarding severity of an impairment. That is true, but no medical opinion in this record characterizes the treatment of Plaintiff's intestinal problems as "conservative," nor does substantial evidence support that conclusion. On the contrary, the record establishes that Plaintiff treats her celiac disease and minimizes gastrointestinal attacks by adhering to the rigid demands of a gluten-free lifestyle. The Commissioner presents no evidence or argument suggesting that such a diet, coupled with the eleven medications disclosed to Dr. Brimmer (Record at 384), constitutes "conservative treatment." Third, and lastly, the Commissioner cites *Bruton v. Massanari*, 268 F.3d 824 (9th Cir. 2001). She characterizes it as "holding that [an] ALJ properly considered [the] fact that [a] claimant stopped working for reasons unrelated to medical disability." (Def. XMSJ at 8 (citing *Bruton*, 268 F.3d at 826).) The case holds no such thing, and the cited passage is a procedural history merely relating that a claimant had been laid off from his job following a putatively disabling injury. *Id.* at 826. None of the Commissioner's three cases support the ALJ's adverse credibility determination.

In summary, the ALJ faltered in her obligation to supply specific, clear, and convincing reasons to discredit Plaintiff's report of her symptoms in the absence of affirmative evidence of malingering. The ALJ short-circuited required analyses, substituted her own medical judgment for that of medical professionals, and improperly considered Plaintiff's decision nearly twenty years

ago to rely on her inheritance and savings while contemplating starting a small business. In doing so, the ALJ committed error.

In the circumstances of this case, the remedy for the ALJ's error is to credit Plaintiff's testimony as to the intensity, persistence, and limiting effects of her symptoms. *See Vasquez*, 572 F.3d at 593-94 (discussing circumstances justifying application of credit-as-true rule); *see also Connett*, 340 F.3d at 876 (observing that Ninth Circuit law concerning credit-as-true doctrine is only reconcilable if courts "have some flexibility" to deviate from apparently mandatory rule). Here, crediting Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her gastrointestinal symptoms, specifically her attacks of stomach cramping, vomiting, dry heaves, diarrhea, and bowel incontinence, results in a modification of the RFC to add commensurate limitations. The Court need not define the precise contours of those limitations because, as set forth below, the record in this case establishes that any limitation which fairly encompasses Plaintiff's chronic need for unscheduled bathroom breaks of at least 15 minutes each, several times per day, results in a finding of disability.

### C. STEP FIVE

At step five, the Commissioner bears the burden of demonstrating that the claimant is not disabled. *Tackett*, 180 F.3d at 1098. The Commissioner must do so by establishing "that there are a significant number of jobs in the national economy that claimant can do." *Id.* "The ALJ may meet his burden at step five by asking a vocational expert a hypothetical question based on medical assumptions supported by substantial evidence in the record and reflecting *all* the claimant's limitations, both physical and mental, supported by the record." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012) (emphasis supplied). "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id.* (quoting *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993)).

Here, the ALJ asked the VE two hypothetical questions, and based her ultimate finding of non-disability on the answer to the first hypothetical. (Record at 18, 74-76.) However, that question did not incorporate all of Plaintiff's limitations, specifically, her need for several

unscheduled, unexpected restroom breaks of at least 15 minutes each. It thus does not constitute substantial evidence that could support a finding of non-disability. Accordingly, the Court concludes that the ALJ committed reversible error at step five.

### D. REMEDY

Normally, the remedy where an ALJ fails properly to credit testimony is remand to the SSA for further development of the record. *E.g.*, *Hill*, 698 F.3d at 1162. However, a court may remand instead "for a benefits award where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." *Vertigan v. Halter*, 260 F.3d 1044, 1053 (9th Cir. 2001) (internal quotation marks omitted). Further, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *see also Harman v. Apfel*, 211 F.3d 1172, 1178-79 (9th Cir. 2000) (explaining that remand for payment of benefits was appropriate even where an ALJ might, in further proceedings, articulate a proper reason for discrediting testimony). "When an ALJ's reasons for rejecting the claimant's testimony are legally insufficient and it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony, we remand for a calculation of benefits." *Orn*, 495 F.3d at 640 (internal quotation marks omitted).

Here, the ALJ asked the VE a second hypothetical question. (Record at 77-78.) In that hypothetical question, the ALJ asked the VE to assume a person with all the limitations described in the first hypothetical—claimant's age, education, and work background; no exertional restrictions; and a limitation to unskilled work (*id.* at 74-75)—plus a "chronic" need for "three or four" "unscheduled," "random" restroom breaks "that last 15 minutes apiece" (*id.* at 77). The VE responded that such a person would not be "competitive" in the labor market and would suffer from "unemployability." (*Id.* at 77, 78.) In light of that testimony, the record makes plain that a finding of disability would have been required had the ALJ credited Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her gastrointestinal symptoms, which were at least as

17

restrictive as those posited in the ALJ's second hypothetical. Under such circumstances, remand for further proceedings would only delay payment of benefits, for which Plaintiff has waited since filing her application in April 2011. Further, Plaintiff is 56 years old. These factors of delay and age further commend the course of immediately remanding for calculation and payment of benefits.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion for summary judgment of Plaintiff Martha Jean Schultz and **DENIES** the cross-motion for summary judgment of the Acting Commissioner of Social Security. The Court **REMANDS** this case to the Social Security Administration for calculation and payment of benefits.

This Order terminates Civil Case No. 13-cv-0167 and all deadlines and motions therein.

**IT IS SO ORDERED**.

Date: March 5, 2014

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**